IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN WALKER, PH.D.; ROBERT B. BROBST;
ROBERT K. BASTIAN; and CHARLES E.
GROSS,

          Petitioners,

   v.

THE CENTER FOR FOOD SAFETY,

          Respondent.

Case No.: 1:09-mc-00279 (RMC)

**MOTION FOR CONTEMPT FOR RESPONDENT THE CENTER
FOR FOOD SAFETY'S FAILURE TO COMPLY WITH THE COURT'S
JULY 14, 2009 ORDER AND MEMORANDUM IN SUPPORT THEREOF**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN WALKER, PH.D.; ROBERT B. BROBST;
ROBERT K. BASTIAN; and CHARLES E.
GROSS,

                Petitioners,

      v.

THE CENTER FOR FOOD SAFETY,

                Respondent.

Case No.: 1:09-mc-00279 (RMC)

## MOTION FOR CONTEMPT FOR RESPONDENT THE CENTER FOR FOOD SAFETY'S FAILURE TO COMPLY WITH THE COURT'S JULY 14, 2009 ORDER

       Petitioners John Walker, Ph.D., Robert B. Brobst, Robert K. Bastian, and Charles E. Gross (collectively, "Petitioners"), by and through their undersigned counsel, respectfully submit this Motion for Contempt for Respondent The Center for Food Safety's Failure to Comply with the Court's July 14, 2009 Order and state as follows:

       1.      On April 29, 2009, Petitioners' counsel caused this Court to issue a subpoena to produce documents that was served on The Center for Food Safety ("CFS") on April 30, 2009, seeking various documents in the possession, custody or control of CFS (the "Subpoena").

       2.      On May 8, 2009, CFS, through Mr. Andrew C. Kimbrell ("Mr. Kimbrell"), Executive Director of CFS, provided a written response to the Subpoena, but did not produce any documents, claiming that the documents sought by the Subpoena were protected by either the attorney-client privilege or the attorney work product doctrine.  A true and correct copy of CFS' response to the Subpoena is attached hereto as Exhibit A.

       3.      On May 14, 2009, Petitioners' counsel sent a letter to CFS disputing CFS' claim of privilege over these documents and requesting further information in response to the

Subpoena (the "May 14 Letter").  A true and correct copy of the May 14 Letter is attached hereto as Exhibit B.

4.      CFS did not respond to the May 14 Letter.

5.      Petitioners' counsel sent a second letter to CFS on May 29, 2009, again requesting a response to the May 14 Letter and informing CFS that they would file a motion to compel if CFS did not respond by June 2, 2009 (the "May 29 Letter").  A true and correct copy of the May 29 Letter is attached hereto as Exhibit C.

6.      Once again, CFS did not respond or attempt to communicate with Petitioners' attorneys in any manner at any time.

7.      On June 5, 2009, Petitioners filed with this Court a Motion to Compel Production of Documents (the "Motion to Compel") seeking the documents requested from CFS by the Subpoena.

8.      The Motion to Compel was first served on CFS on June 24, 2009.

9.      CFS was apparently aware of the deadline for responding to the Motion and attempted to get the Motion dropped before the deadline expired.  (*See* E-mail from Richard Wingate to George Weaver, et al., dated July 6, 2009, attached hereto as Exhibit D).

10.      CFS did not file a memorandum of points and authorities in opposition or otherwise respond to the Motion to Compel within the time required by Local Civil Rule 7(b) of the United States District Court for the District of Columbia.

11.      Accordingly, on July 14, 2009, Petitioners filed with this Court a Motion for Entry of Order Compelling Production of Documents.

12.      On July 14, 2009, this Court entered an Order granting Petitioners' Motion to Compel  in its entirety and compelling CFS "to produce all documents in its possession, custody

or control requested by the subpoena to produce documents issued by this Court and served on the Center for Food Safety on April 29, 2009, within five (5) days of the Court's Order" (the "Order").  A true and correct copy of the Order is attached hereto as Exhibit E.

13.     Despite the Court's Order, CFS refused to produce the documents requested by the Subpoena.

14.     On July 20, 2009, CFS, through Mr. Kimbrell, provided a written response to the Petitioners' counsel refusing to produce the documents requested by the Subpoena and ordered to be produced by this Court's July 14, 2009 Order ("CFS' July 20 Letter").  A true and correct copy of CFS' July 20 Letter is attached hereto as Exhibit F.

15.     Instead, CFS provided an untimely and woefully insufficient "Privilege Log," claiming for the first time since the Motion to Compel was filed that the requested documents are protected by the attorney-client and work product privilege.

16.     On July 27, 2009, Petitioner's counsel sent a letter to CFS notifying CFS that it was in violation of the Court's July 14, 2009 Order, requesting that all the documents requested by the Subpoena and ordered to be produced by the Court's July 14, 2009 Order be produced by CFS immediately, and informing CFS that Petitioners would have no choice but to file a contempt motion if CFS did not produce the requested documents by July 30, 2009 (the "July 27 Letter").  A true and correct copy of Petitioners' July 27 Letter is attached hereto as Exhibit G.

17.     In yet another attempt to delay its production and avoid the Court's Order, CFS hired an attorney who claimed that a response to Petitioners' July 27, 2009 letter could not be provided by July 30, 2009.

18.     On July 31, 2009, Petitioners' counsel received a letter from CFS' attorney stating that the requested documents are privileged and will not be produced ("CFS' July 31 Letter").  A true and correct copy of the July 31 Letter is attached hereto as Exhibit H.

19.     In this letter, CFS claimed for the first time that Mr. Kimbrell was acting separately and independently from CFS with respect to his involvement in the underlying dispute currently pending in the United States District Court for the Middle District of Georgia ("Georgia Case").

20.     Contrary to this assertion, Mr. Kimbrell filed a notice of appearance in the Georgia Case listing CFS' contact information.  A true and correct copy of Mr. Kimbrell's Notice of Appearance is attached hereto as Exhibit I.

21.     After attending the deposition of one of the defendants in the Georgia Case on behalf of CFS, Mr. Kimbrell abruptly withdrew as counsel for the plaintiffs in the Georgia Case when the court in the Georgia Case required that Mr. Kimbrell file a *pro hac vice* application.  A true and correct copy of Mr. Kimbrell's Motion to Withdraw is attached hereto as Exhibit J.

22.     These facts further underscore CFS' involvement in the Georgia Case and support Petitioners' right to obtain discovery from CFS.

23.     As of the date of the filing of this Motion, CFS has not produced the documents requested by the Subpoena and ordered to be produced by this Court in its July 14, 2009 Order.

WHEREFORE, for the reasons stated in this Motion and in Petitioners' Memorandum in Support of this Motion, Petitioners respectfully request that the Court:

        a)  hold The Center for Food Safety in willful contempt of the Court's July 14, 2009 Order;

b)  direct The Center for Food Safety to comply with the Court's July 14, 2009
Order by producing all documents set forth therein, without objection;

c)  impose monetary sanctions against The Center for Food Safety in the
amount of $1,000.00 per day for every day that it remains in violation of the
Court's Order, beginning two (2) days after the Court's Order on Petitioners'
Motion for Contempt;

d)  award Petitioners reasonable attorney's fees and expenses for bringing and
pursuing this Motion; and

e)  award other and further relief as is deemed just and proper by the Court.

Respectfully submitted,

*/s/ David M. Irvine*
David M. Irvine
DC Bar No. 982091
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C.  20006
Phone:  (202) 496-7500
Fax:  (202) 496-7756

Barry J. Armstrong
Georgia Bar No. 022055
Ian K. Byrnside
Georgia Bar No. 167521
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Tel:  (404) 527-4000
Fax: (404) 527-4198

Attorneys for Petitioners John Walker, Ph.D.,
Robert B. Brobst, Robert K. Bastian, and
Charles E. Gross

Dated:  August 4, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN WALKER, PH.D.; ROBERT B. BROBST;
ROBERT K. BASTIAN; and CHARLES E.
GROSS,

               Petitioners,

    v.

THE CENTER FOR FOOD SAFETY,

               Respondent.

Case No.: 1:09-mc-00279 (RMC)

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT
FOR RESPONDENT THE CENTER FOR FOOD SAFETY'S FAILURE
TO COMPLY WITH THE COURT'S JULY 14, 2009 ORDER**

Petitioners John Walker, Ph.D., Robert B. Brobst, Robert K. Bastian, and Charles E. Gross (collectively, "Petitioners"), by and through their undersigned counsel, hereby submit their Memorandum in Support of Motion for Contempt for Respondent The Center for Food Safety's Failure to Comply with the Court's July 14, 2009 Order (the "Court's Order") and state as follows:

## I.   PRELIMINARY STATEMENT

On July 14, 2009, this Court entered an Order compelling The Center for Food Safety ("CFS") to "produce all documents in its possession, custody or control requested by the subpoena to produce documents issued by this Court and served on the Center for Food Safety on April 29, 2009." Without seeking reconsideration, CFS brazenly ignored the Court's Order, claiming that it did not have to produce the requested documents because such documents are protected by the attorney-client privilege or work product doctrine. This untimely and insufficient claim of privilege does not excuse CFS from complying with the Court's Order. As a preliminary matter, CFS is a non-profit public interest and environmental organization, not a

law firm or other entity engaged in the practice of law, and CFS is neither a party nor an attorney in the underlying dispute for which the Motion to Compel was filed.  Accordingly, CFS does not enjoy the protections of the attorney-client privilege or the work product doctrine with respect to the documents requested by the subpoena.

Even assuming, *arguendo*, that these protections could apply to CFS, CFS failed to assert them in a timely and sufficient manner.  By failing to respond to Petitioners' Motion to Compel and assert its privilege claim and by failing to provide a privilege log in compliance with Rule 45(d)(2)(A) of the Federal Rules of Civil Procedure, CFS waived any right to assert privilege over the requested documents.  Therefore, CFS is required to produce the requested documents pursuant to the Court's Order.  As of the date of this filing, CFS remains in direct violation of the Court's Order, refusing to produce any of the documents requested by the subpoena and ordered to be produced by the Court's Order.

Despite a subpoena and a court order, CFS continues to engage in a pattern of delay tactics designed to frustrate Petitioners' right to obtain discovery.  CFS' intentional and willful conduct in violating the Court's Order must not be condoned.  Accordingly, Petitioners seek an order imposing contempt sanctions against CFS and directing CFS to comply with the Court's Order by producing all documents set forth therein, without objection.

## II.  <u>STATEMENT OF FACTS</u>

### A.  <u>The Subpoena</u>

On April 29, 2009, Petitioners' counsel caused this Court to issue a subpoena to produce documents, which was served on CFS on April 30, 2009, seeking various documents in the possession, custody or control of CFS (the "Subpoena").  On May 8, 2009, CFS, through Mr. Andrew C. Kimbrell ("Mr. Kimbrell"), Executive Director of CFS, provided a written response to the Subpoena, but did not produce any documents, claiming that the documents sought by the

Subpoena were protected by either the attorney-client privilege or the attorney work product doctrine ("Subpoena Response," attached as Exhibit A to Petitioners' Motion for Contempt). Specifically, in response to each of the requests the Subpoena Response stated only:

> The Center for Food Safety Objects to this request as it seeks information that is by definition protected by the attorney-client privilege or the attorney work product doctrine. Materials responsive to this request would necessarily include information protected by applicable privileges. The Center for Food Safety hereby asserts those privileges and objects to [Petitioners'] attempt to collect protected material.

(*See* Subpoena Response, Response to Requests (a) - (e).)  Notably, CFS did not explain how or why the attorney-client privilege and/or work product doctrine applied to the requested documents and did not provide a privilege log indexing the withheld documents.

On May 14, 2009, Petitioners' counsel sent a letter to CFS disputing CFS' claim of privilege over these documents and requesting further information in response to the Subpoena (the "May 14 Letter," attached as Exhibit B to Petitioners' Motion for Contempt).  Having received no response to the May 14 Letter, Petitioners' counsel sent a second letter to CFS on May 29, 2009, again requesting a response to the May 14 Letter and informing CFS that they would file a motion to compel if CFS did not respond by June 2, 2009 (the "May 29 Letter," attached as Exhibit C to Petitioners' Motion for Contempt).  Once again, CFS did not respond or attempt to communicate with Petitioners' attorneys in any manner.

**B.    The Motion to Compel and the Court's Order**

On June 5, 2009, Petitioners filed with this Court a Motion to Compel Production of Documents (the "Motion to Compel") seeking the documents requested from CFS by the Subpoena.  The Motion to Compel was first served on CFS on June 24, 2009.  CFS, although apparently aware of the Motion to Compel, did not file a memorandum of points and authorities in opposition or otherwise respond to the Motion to Compel within the time required by Local

Civil Rule 7(b) of the United States District Court for the District of Columbia.  Accordingly, on July 14, 2009, Petitioners filed with this Court a Motion for Entry of Order Compelling Production of Documents.  On July 14, 2009, this Court entered an Order granting Petitioners' Motion to Compel  in its entirety and compelling CFS "to produce all documents in its possession, custody or control requested by the subpoena to produce documents issued by this Court and served on the Center for Food Safety on April 29, 2009, within five (5) days of the Court's Order." (*See* Court's Order, attached as Exhibit E to Petitioners' Motion for Contempt).

### C.      CFS' Refusal to Comply with the Court's Order

Despite the Court's Order, CFS refused to produce the documents requested by the Subpoena.  On July 20, 2009, CFS, through Mr. Kimbrell, provided a written response to Petitioners' counsel refusing to produce the documents requested by the Subpoena and ordered to be produced by the Court's Order ("CFS' July 20 Letter," attached as Exhibit F to Petitioners' Motion for Contempt).  Instead, CFS provided an untimely and woefully insufficient "privilege log," claiming for the first time since the Motion to Compel was filed that the requested documents are protected by the attorney-client privilege and/or the work product doctrine.  In CFS' July 20 Letter, Mr. Kimbrell states that "[t]he details of this attorney client privilege and the application in this instance of the attorney work product doctrine were explained in detail in prior correspondence."  As demonstrated by CFS' Subpoena Response, CFS' only prior correspondence with Petitioners' counsel, CFS did not explain in detail, or even generally, how the attorney-client privilege and/or the work product doctrine apply to the requested documents.

On July 27, 2009, Petitioner's counsel sent a letter to CFS notifying CFS that it was in violation of the Court's Order, requesting that all the documents requested by the Subpoena and ordered to be produced by the Court's Order be produced by CFS immediately, and informing CFS that Petitioners would have no choice but to file a contempt motion if CFS did not produce

the requested documents by July 30, 2009 ("July 27 Letter," attached as Exhibit G to Petitioners'

Motion for Contempt).  In yet another attempt to delay its production and avoid the Court's

Order, CFS hired an attorney who claimed that a response to Petitioners' July 27 Letter could not

be provided by July 30, 2009, but that a response would be provided by August 4, 2009.

On July 31, 2009, Petitioners' counsel received a letter from CFS' attorney stating that

the documents requested by the Subpoena and ordered to be produced by the Court's Order are

privileged and that CFS would not produce the requested documents.  ("July 31 Letter," attached

as Exhibit H to Petitioners' Motion for Contempt.)  In this letter, CFS' counsel made vague

threats against Petitioners, claiming that if Petitioners moved forward with their contempt

motion, CFS would seek reconsideration of the Court's Order based on purported deficiencies in

the Subpoena.  Surely CFS' counsel is aware that any alleged deficiencies in the Subpoena were

waived by CFS' failure to serve their objections on these grounds within the time set forth in

Fed. R. Civ. P. 45(c)(2)(B).  The July 31 Letter only further illustrated that CFS has no intention

of complying with the Court's Order.  Accordingly, Petitioners had no choice but to file the

present Motion for Contempt.

As of the date of the filing of this Motion, CFS remains in violation of the Court's Order,

having failed to produce any of the documents requested by the Subpoena and ordered to be

produced by this Court in its July 14, 2009 Order.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A.     Contempt Standard

This Court "has both an inherent and a statutory power to enforce compliance with its

orders and may exercise that authority through a civil contempt proceeding." *Petties v. District*

*of Columbia*, 888 F. Supp. 165, 168 (D.D.C. 1995) (citations omitted).  Pursuant to 18 U.S.C.

§ 401, "[a] court of the United States shall have power to punish by fine or imprisonment, at its

discretion, such contempt of its authority, and none other, as - . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  Accordingly, upon the proper demonstration of evidence, this Court has the power to hold CFS in contempt for violating the Court's Order.

Any party who "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order" may be held in contempt of court.  *Id.* (internal quotations and citations omitted).  "In a civil contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order."  *Id.* at 169 (citations omitted).  The Court does not, however, need to find that a violation of a court's order was willful or intentional.  *Id.*

The evidence presented to the Court clearly satisfies Petitioners' burden of proof under the civil contempt standard.  First, there is no dispute that the Court's Order was in effect as of July 14, 2009.  Second, the Court's Order clearly requires CFS to produce the documents requested by the Subpoena.  Third, there is no dispute that CFS has not produced the documents requested by the Subpoena and, thus, CFS failed to comply with the Court's Order.  This evidence alone is sufficient to establish that CFS is in contempt.  In case there is any doubt, however, Petitioners explain in detail below why Petitioners are entitled to obtain the requested documents and why CFS' claim of privilege over the requested documents does not unilaterally absolve its failure to comply with the Court's Order.

## B.      Petitioners Are Entitled to Obtain Discovery from CFS on Any Matter Relevant to Their Claims or Defenses.

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ."  Dr. David Lewis, a

plaintiff in the underlying dispute pending in the United States District Court for the Middle District of Georgia (the "Georgia Case"), testified in his deposition on April 17, 2009, that "some of the hard costs" of litigation in the Georgia Case, specifically some or all of the deposition costs, are being paid for "by The Center for Food Safety and its supporters."  Furthermore, Mr. Kimbrell filed a notice of appearance in the Georgia Case on behalf of CFS the day before one of the defendants' depositions in the Georgia Case.  (*See* Notice of Appearance of A. Kimbrell, attached as Exhibit I to Petitioners' Motion for Contempt.)  Mr. Kimbrell attended the deposition of that defendant in Atlanta, Georgia, but withdrew as counsel for the plaintiffs in the Georgia Case shortly thereafter when the court in the Georgia Case required that Mr. Kimbrell file a *pro hac vice* application.  (*See* Motion to Withdraw by A. Kimbrell, attached as Exhibit J to Petitioners' Motion for Contempt.)

Based on these facts, Petitioners have reason to believe that CFS is involved in the Georgia Case and has documents relevant to Petitioners' defenses in that case.  In fact, CFS' response to the Court's Order confirms that CFS has documents in its possession, custody or control that relate to the Georgia Case.  Furthermore, although Mr. Kimbrell belatedly disputed Dr. Lewis' testimony, this does not, in and of itself, eliminate Petitioners' right to obtain discovery related to their defenses from CFS.

C.     **The Attorney-Client Privilege and Work Product Doctrine Do Not Apply to the Documents Requested by the Subpoena and Ordered to be Produced by the Court's Order.**

The primary purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients," and courts construe this privilege "narrowly to protect only those purposes which it serves."  *Jones v. United States*, 828 A.2d 169, 174 (D.C. 2003).   Accordingly, the attorney-client privilege only applies to "confidential communications *between an attorney and his client* relating to a legal matter for which the client

has sought professional advice." *See Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) (emphasis added); *Jones*, 828 A.2d at 174. Similarly, the attorney work product doctrine creates a qualified privilege that protects from disclosure otherwise discoverable material prepared by an attorney or attorney's agent in anticipation of litigation. *See* FED. R. CIV. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947); *Parks v. United States*, 451 A.2d 591, 607 (D.C. 1982).

CFS is admittedly a non-profit public interest and environmental organization, not a law firm or other entity engaged in the practice of law. CFS is also not a party or an attorney in the Georgia Case. Furthermore, neither CFS nor Mr. Kimbrell has claimed to be an attorney for, or a client of, Decker, Hallman, Barber & Briggs ("DHBB"). Accordingly, the very fact that CFS possesses documents from DHBB related to the Georgia Case necessarily precludes these documents from qualifying as confidential attorney-client communications or protected attorney work product. Any attorney-client or work product protection that may have applied to DHBB's documents was waived when these documents were shared with CFS.

Similarly, CFS does not represent plaintiffs in the Georgia Case and, thus, does not enjoy the protections of the attorney-client privilege in communications with them. Although CFS' attorney claims that Mr. Kimbrell was acting solely in his role as an attorney and that CFS is not involved in the Georgia Case, the facts tell a different story. As a preliminary matter, it is important to note that neither CFS nor Mr. Kimbrell has ever made any claim that Mr. Kimbrell was acting as an independent attorney outside of CFS before CFS' July 31 Letter. CFS' belated attempt to distinguish Mr. Kimbrell's role in the Georgia Case from his involvement with CFS smacks of insincerity and directly contradicts the evidence.

In its response to the Subpoena, CFS claims that responding to the requests would require *CFS* to waive *its* attorney-client privilege and that *CFS* asserts the attorney-client and work product privileges. (*See* Subpoena Response, attached as Exhibit A to Petitioners' Motion for Contempt). Nowhere in its response does CFS claim that it is not involved in the Georgia Case or that Mr. Kimbrell is asserting his privilege as an attorney. Similarly, in CFS' July 20 Letter responding to the Court's Order, CFS claims that communications between *CFS* and plaintiffs or counsel for plaintiffs in the Georgia Case are covered by the attorney-client privilege or work product doctrine. (*See* CFS' July 20 Letter, attached as Exhibit F to Petitioners' Motion for Contempt). Again, there is no indication that Mr. Kimbrell has been operating separately and distinctly from CFS with respect to his involvement in the Georgia Case. CFS' eleventh-hour attempt to separate Mr. Kimbrell's role from CFS is insufficient to relieve CFS from complying with the Court's Order and further evidences CFS' bad faith in refusing to produce the requested documents.

CFS also claims that the fact that Mr. Kimbrell appeared as counsel for plaintiffs in the Georgia Case somehow means that CFS was not involved. To the contrary, as his notice of appearance demonstrates, Mr. Kimbrell appeared in the Georgia Case on behalf of CFS. In filing his notice of appearance in the Georgia Case, Mr. Kimbrell used CFS' physical address and his International Center for Technology Assessment ("ICTA")[1] e-mail address. (*See* Notice of Appearance of A. Kimbrell, attached as Exhibit I to Petitioners' Motion for Contempt). If Mr. Kimbrell were truly acting as an attorney independent of CFS, why did he list his CFS information on his notice of appearance? Furthermore, any e-mails sent or received by Mr.

---

[1] The ICTA is a sister organization of CFS. Upon information and belief, Mr. Kimbrell receives correspondence on behalf of CFS using his ICTA e-mail address.

Kimbrell using a CFS or ICTA e-mail address are the property of CFS and can produced by CFS, regardless of Mr. Kimbrell's status as an attorney.

It is clear that the attorney-client privilege and work product doctrine do not apply to communications between CFS and/or Mr. Kimbrell and DHBB.  CFS should not be permitted to continue abusing the attorney-client privilege and work product doctrine to avoid its obligations under the Federal Rules and the Court's Order.  The Court entered a valid and enforceable Order, and CFS must comply with this Order.

**D.    CFS Waived Any Claim of Privilege Over the Requested Documents.**

1.    CFS waived its claim of privilege over the requested documents when it failed to respond to the Motion to Compel and assert its alleged privilege.

Even assuming, *arguendo*, that the attorney-client and work product protections apply to the documents requested by the Subpoena, CFS waived its claim of privilege over the requested documents when it failed to respond to the Motion to Compel and assert its alleged privilege.  It is well established that failure to raise a timely objection to a discovery request waives any privilege that may have applied.  *See, e.g., Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540 (10th Cir. 1984); *In re Papst Licensing GMBH & Co. KG Litigation*, 550 F. Supp. 2d 17 (D.D.C. 2008); *see also Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999) (noting that failure to assert a privilege within a reasonable time constitutes a waiver of the privilege unless the party's failure to object is excused by the court for good cause).

As the Tenth Circuit astutely pointed out in *Peat, Marwick, Mitchell & Co.*, failure to assert a timely privilege claim will even waive privilege over documents that would have been privileged if a timely claim had been made.  748 F.2d at 542.  Specifically, the court stated:

A party seeking to assert the privilege must make a clear showing that it applies.  Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made.  Even though it does not seem seriously disputed that the privilege would have attached

> if the objection had been timely and adequately asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege. It is not enough that a document would have been privileged if an adequate and timely showing had been made. The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document."

*Id.* Accordingly, the court denied petitioners writ of mandamus, holding that petitioners' failure to demonstrate that the attorney-client privilege and work product protection applied to requested documents prior to an order compelling the production of these documents was sufficient to defeat any privilege that would have been applicable to the disputed documents if they had been asserted in a timely fashion. *Id.*

Similarly, in *In re Papst*, this Court found that "waiver of privileges [was] not too harsh a sanction under the circumstances," where defendant did not assert its privilege objections to plaintiff's discovery requests because of an alleged misunderstanding. 550 F. Supp. 2d at 22. Noting that the general rule is that "when a party fails to object to discovery requests, such objections are waived," this Court ordered the defendant to respond to plaintiff's discovery requests "without objection based on attorney client privilege, consulting expert privilege, or attorney work product." *Id.* The facts in the present case provide an even more compelling case for waiving privilege. Unlike the defendant in *In re Papst*, CFS does not claim any misunderstanding. CFS simply believes that it does not have to comply with the Court's Order.

CFS' failure to produce the requested documents, in defiance of a direct court order to do so, "was entirely unjustified and inexcusable and smacks of bad faith." *Id.* CFS presumably read Petitioners' Motion to Compel, which clearly challenged CFS' broad and unexplained claim of privilege over the requested documents in response to the Subpoena. Rather than assert and explain its claim of privilege over these documents, CFS deliberately chose not to respond to Petitioners' Motion to Compel. To be sure, were there any credible objections to producing such

documents, CFS had ample time to assert them in response to Petitioners' Motion to Compel. Instead, CFS did nothing.  Then, when CFS realized it was faced with a court order, it began engaging in delay tactics to avoid its obligations under the Court's Order - tactics that continue to this day.  Notably, it was not until *after* the Court's Order was entered that CFS first asserted its privilege claim.  As the Tenth Circuit made clear in *Peat, Marwick, Mitchell & Co.*, such an untimely claim of privileged will not protect documents from discovery, even if the documents "would have been privileged if an adequate and timely showing had been made."  748 F.2d at 542.  Ultimately, CFS offers no good reason why it "should be allowed, without sanction, to ignore totally a court order" upon which it had a full and fair opportunity to be heard.  *In re Papst*, 550 F. Supp. 2d at 22.

Furthermore, any claim that plaintiffs in the Georgia Case and their counsel were unaware of Petitioners' objections to CFS' claim of privilege is disingenuous.  CFS' July 31 Letter inexplicably states that "[plaintiffs] and their counsel would have asserted the attorney-client privilege and work protection in the action in D.C. District Court if there had been any question regarding whether Mr. Kimbrell was, as the [plaintiffs]' counsel, expressing their position when he objected to your Subpoena on privilege grounds."  (*See* July 31 Letter.)  In fact, the previous correspondence from Petitioners' counsel, on which plaintiffs' counsel was copied, and the Motion to Compel, of which plaintiffs' counsel was undeniably aware, directly challenged the assertion of privilege over these documents and any claim that Mr. Kimbrell was serving as plaintiffs' counsel.  (*See* May 14 Letter attached as Exhibit B to Petitioner's Motion for Contempt; May 29 Letter attached as Exhibit C to Petitioner's Motion for Contempt; Email from Richard Wingate to George Weaver, *et al.*, dated July 6, 2009, attached as Exhibit D to Petitioner's Motion for Contempt.)  Questions regarding the application of privilege to the

requested documents could not have been more clearly raised, and any claim by CFS, Mr. Kimbrell, plaintiffs' or plaintiffs' counsel that they were unaware of these questions is either insincere or the result of willful ignorance.

CFS' failure to respond to Petitioners' Motion to Compel and assert its alleged privilege waived any privilege that may have existed with respect to the requested documents and its untimely claim of privilege cannot protect these document from discovery at this late juncture.

> 2.    CFS waived any attorney-client privilege or work product protection over the requested documents by failing to provide a privilege log pursuant to Fed. R. Civ. P. 45(2)(A).

In its response to the Subpoena, CFS claimed privilege over all of the requested documents.   Pursuant to Fed. R. Civ. P. 45(2)(A), "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) *describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.*"   (emphasis added). Although CFS claimed the requested documents were protected by the attorney-client privilege and/or work product doctrine, CFS did not provide a privilege log describing the withheld documents, as required by Fed. R. Civ. P. 45(2)(A)(ii).   In fact, Petitioners' May 14 Letter and May 29 Letter directly requested this information and asked that a privilege log be provided.   As noted above, CFS did not respond to these letters and did not provide a privilege log.

As this Court has noted, "[f]ailure to produce a privilege log may be deemed a waiver of the privilege."   *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 2 (D.D.C. 1999); *see also First Am. Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 (D.D.C. 1998) (holding that magistrate judge could permissibly base determination that privilege had been waived on failure to submit privilege log); *Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998)

("[P]laintiff's failure to comply with Fed. R. Civ. P. 26(b)(5), requiring him to file a privilege log, bars in itself any claim of privilege, whatever its basis.").  In *Avery*, much like in the present case, the recipients of a subpoena duces tecum refused to produce requested documents, claiming that the nature of the request in itself established that the subpoena sought production of materials protected from disclosure by the attorney-client and work product privileges, and did not produce a privilege log.  *Id.* at 1.  The court noted that a privilege log is now "the universally accepted means of asserting privileges in discovery in the federal courts; the general objection that, for example, a request for production of documents calls for the production of documents which are privileged is condemned as insufficient."  *Id.* at 1 (citations omitted).

Similarly, in an unreported opinion, this Court noted that "[g]iven the possibility that tardy privilege claims will further ensnare parties in discovery battles, courts in this district have treated seriously a party's noncompliance with Rule 26(b)(5) and have been willing to impose the severe sanction of waiver."  *Gen. Elec. Co. v. Johnson*, Civil Action No. 00-2855 (JDB), 2007 WL 433095, at *3 (D.D.C. Feb. 5, 2007).  Other courts have agreed with this interpretation. *See Breon v. Coca-Cola Bottling Co.*, 232 F.R.D. 49, 55 (D. Conn. 2005) (holding that whatever attorney-client privilege and work product protection might have applied to certain documents had been waived by defendant's failure to provide a privilege log); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, No. 02 Civ. 0504 (RCC), 2003 WL 22110281, at *3 (S.D.N.Y. Sept. 10, 2003) ("Parties waive their rights to claim work-product protection for any documents that have been in their control and for which a privilege log has not been presented.").

CFS finally provided a purported privilege log to Petitioners' counsel *after* the Court's Order, but this "privilege log" was clearly untimely and woefully insufficient under Fed. R. Civ.

P. 45(2)(A). Courts have often held that failure to provide a privilege log that conforms to the requirements of the Federal Rules of Civil Procedure will amount to a waiver of the privilege. *See, e.g., Aurora Loan Svcs., Inc. v. Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (party waived privilege for documents identified in privilege log because log failed to identify which privilege was being asserted for particular documents and often failed to identify parties to each communication). As in *Aurora*, CFS' privilege log does not identify which privilege applies to the listed documents and often does not identify parties to the communications, listing simply DHBB as a recipient or sender.

Even if the requested documents are somehow privileged, CFS clearly failed to comply with the provisions of Fed. R. Civ. P. 45(2)(A). At a minimum, CFS was required to describe the nature of the documents being withheld so that Petitioners and the Court could make a determination as to whether the privilege was properly asserted. As is plainly evident from CFS' "privilege log," CFS failed to make any attempt to do so. CFS' descriptions of the withheld documents note only that there was a communication between Mr. Kimbrell and DHBB. Even if the Court views Mr. Kimbrell as an attorney independent of CFS, the descriptions provided by CFS of the documents in its privilege log are insufficient. As the Southern District for New York pointed out, "[a]n attorney and client can have many communications which are neither privileged nor subject to work product protection, e.g., correspondence transmitting documents, etc. A description consisting of 'communications' or 'communications with counsel' is insufficient to establish even the minimal showing required in a privilege log because it does not permit the adversary to make an intelligent assessment as to the applicability of a privilege." *SEC v. Beach Hill Asset Mgmt., LLC*, 231 F.R.D. 134, 143-44 (S.D.N.Y. 2004). Likewise, communications between Mr. Kimbrell and DHBB are not per se privileged. Accordingly, CFS

failed to describe the withheld documents in a manner sufficient to allow Petitioners and the Court to determine the applicability of the attorney-client privilege and work product doctrine.

## IV.  <u>CONCLUSION</u>

Petitioners' Motion to Compel clearly disputed CFS' claim of privilege over the requested documents, and CFS had ample time to respond to the Motion to Compel.  Since CFS was undeniably aware of the Motion to Compel, it is clear that CFS made a calculated decision to ignore the Motion to Compel and consciously chose not to raise its objections of privilege. The time for CFS to assert its objections has now passed and any privileges that may have applied to the requested documents have been waived.

For all of the reasons discussed above, Petitioners respectfully request that the Court grant their Motion for Contempt in its entirety.

Respectfully submitted,

*/s/ David M. Irvine*
David M. Irvine
DC Bar No. 982091
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C.  20006
Phone:  (202) 496-7500
Fax:  (202) 496-7756

Barry J. Armstrong
Georgia Bar No. 022055
Ian K. Byrnside
Georgia Bar No. 167521
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Tel:  (404) 527-4000
Fax: (404) 527-4198

Attorneys for Petitioners John Walker, Ph.D.,
Robert B. Brobst, Robert K. Bastian, and
Charles E. Gross

Dated:  August 4, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN WALKER, PH.D.; ROBERT B. BROBST;
ROBERT K. BASTIAN; and CHARLES E.
GROSS,

                Petitioners,

    v.

THE CENTER FOR FOOD SAFETY,

                Respondent.

Case No.: 1:09-mc-00279 (RMC)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION FOR CONTEMPT FOR RESPONDENT THE CENTER FOR FOOD SAFETY'S FAILURE TO COMPLY WITH THE COURT'S JULY 14, 2009 ORDER AND MEMORANDUM IN SUPPORT THEREOF** was served via first-class mail, postage prepaid, on this 4th day of August, 2009, to the following:

        Tameka M. Collier
        Troutman Sanders LLP
        401 9th Street, NW
        Suite 1000
        Washington, DC 20004-2134

                        */s/ David M. Irvine*
                        David M. Irvine